The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any matter or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nine and give their attention for the court is now sitting. God save the United States and this honorable court. Be seated. Welcome, everyone, to the Court of Appeals this morning. We have three interesting cases and we look forward to hearing from counsel. In United States v. Lundy, Mr. Babineau, pleased to hear from you, sir. Good morning, judges. It's my distinct privilege to represent Mr. Lundy before the court. Very narrow issue, as you can tell from the brevity of the brief that I filed in support of the Two issues I present to the court. This was a case in which, as you know, Mr. Lundy pled guilty to two counts, a conspiracy to distribute and distribution of cocaine and cocaine base as well as a firearm charge related to his drug charge. Subsequent to pleading guilty, additional information was gathered regarding Mr. Spencer, Sean Spencer, who was a cooperating government witness in the case, who was intimately involved in the case from the standpoint of the police investigation and ultimately the prosecution. What would have been the prosecution of Mr. Lundy had the matter gone to trial. We learned through a telephone conversation which was from the jail, participated in by my client, that Mr. Spencer had changed at least his story as to my client's involvement in the crime. Based upon that and based upon additional information being learned subsequent to the guilty plea by Mr. Lundy and myself as to the lack of involvement of his wife in any criminal conduct, he asked me to file a motion to withdraw his guilty plea pursuant to the Federal Rules of Criminal Procedure 11D2B. In that filing, I set out to the court that Mr. Lundy was in a position to show a request in the withdrawal of his guilty plea and then the court conducted, Judge Dumar conducted a couple day hearing in which a number of witnesses were called by the government. Pretty much had a trial didn't you? We did and that's what Judge Dumar said was going to happen because at one point in time there was a motion to withdraw the motion to withdraw the guilty plea and then that motion was withdrawn. Which brings me to my question, please don't take this the very uncomfortable standing here this morning. Maybe not, maybe not, but did you consider whether you should withdraw either for purposes of appeal or for purposes of that trial that Judge Dumar insisted on having? No sir, I had not considered that. I had you know a very meaningful good relationship with my client. As the court knows, he raised his right hand. He took the witness stand after being apprised of all the pitfalls associated with that. Well if you're comfortable, I'm okay. It just strikes me as the kind of situation that most lawyers wouldn't want to be anywhere near. I mean you march your client in, you go through a fairly thorough Rule 11. Yes sir. The plea is accepted. Five, six weeks go by and then boom there's a motion to withdraw and lots of claims and issues raised and the judge won't permit you to withdraw the motion to withdraw, insist on a two-day trial. It just seems like you got caught up in a vortex that you'd have been better off being pretty far away from. Well I believe Judge if you can stand tall and you can look yourself in the mirror and know that you're zealously representing your client's interest at every possible turn that you stay in the case. Many lawyers cut and run because that sometimes is the easy thing to do. I try not to be stupid either. That's a good rule. I understand that. I don't need the 2x4 to smack me upside the head. I appreciate that. But in this particular case and part of the reason as you can see from the record of the testimony of my client, there was a lot of information he agreed was discussed but that he was not forthcoming about you know with me in terms of his total motives and his entering his plea of guilty. And of course he entered his plea of guilty as he testified to primarily because of the threat of prosecution of his wife Ms. Wilson. And he had an 11 year old and a 7 year old. They've since had a few birthdays. They told the judge he entered the plea of guilty because he was guilty. I understand that. That's what he said in the Rule 11 before the magistrate judge. And he he agreed but didn't have enough evidence to prosecute his wife. That undermined it. He didn't get to get to consideration or something. Yes. Is your best issue whether there was probable cause to prosecute his wife? The government says there is or was. Well, the government does multiple ways they could have prosecuted her, right? But the only ways they argue they could have prosecuted her would have been as a result of the search warrant that was executed in July because the March 20th event of 2012 which is spoken about significantly in the record and was the overt act, one of the overt acts, the major overt act upon which my client's guilty plea was based in the statement of facts focus. But she also pled guilty to state court. Under the first offender statute to simple possession. That's correct. She did. And that charge drugs when they ask you to search warrant drugs in the house and she lived in the house. They they did find drugs and guns. That's correct. And both both of them. Neither of them were prohibited from owning firearms. William, they brought a gun charge against her. They could have brought the drug charges against. Well, they did bring gun charge against her too, but that that is what charge it with felony gun charges and and she was and they didn't prosecute her based on this. Plea deal. Well, they allow the state. This was a case that initiated with the Norfolk Police Department to a misdemeanor over in the state court. She actually pled to stipulate to the facts in the felony and and got under the Virginia statute. The first first offender was continued for a year and then ultimately dismissed. So there's no record. Is that what it is? Is it a misdemeanor or no record? It's it will. It would show because you can't get the benefit of first offender, but one time in your life. So it would show that she was charged with a felony in the chart. The felony was dismissed under the first offender. She is not. She's not a convicted felon, so she got out from under. That's correct. Things as a result of the guilty plea and she could have been charged with much. They had probable cause to charge her with a lot of other things. I would. I would record. Well, I would. I would disagree. I would disagree with that on on a couple of a couple of levers levels that there were drugs clearly present in the house and there were guns present in the house, but she was not tied in any way. In matter of fact, the evidence lived in the house and she was right, but but this was a drug conspiracy judge involving Henderson and Perry and they had in Lundy. They probably could have proven she was driving that car. If they could have proven it, I was pretty much circumstantial evidence. I wish I wish they could. I wish they could. But no one's been able to offer any any proof. It was one police officer who said he saw a female in the vehicle who he said at first he said my client was driving. Then he said no, he wasn't. He wasn't driving. Then they said it was $500 that was involved in a half an ounce. And then it was $1200. Whether they could have convicted her question is whether they had probable cause to charge and prosecute her. Well, I think the power of the federal government, you can you can charge just about anyone with anything if you want, if you if you if you want to, but but I'd like to believe that the power of the prosecution is a little more ethical than than threatening to prosecute someone that there's that you have little or little or no chance of of of succeeding against just because you can. And I think the carrot for was in constructive possession of the drugs that were in that house. I think she admitted she was in actual possession of drugs in the house that she was a user. So she was she was a user, but she was not involved in a drug conspiracy. But it's just a small step to an inference of an intent to distribute. If your husband's a distributor, and you're a user, and you live with them, and you're in possession of all of it. I don't think it's a very large step to get to she also intended to distribute. Well, but this is she needs to earn money to support her own use. Well, she she worked and the evidence obviously was that she she worked as well as as well as he worked. And in in addition to that, my client pled guilty to a drug conspiracy involving him, himself and Henderson and and Perry. And then there was this cooperating witness, Spencer, and the government's the government's evidence based upon the hearing that we we conducted the information that that we learned after the guilty plea would would maybe could have resulted in a in a in a guilty finding by a jury. But there was a significant evidence that I believe that would dispute whether or not he was guilty of anything. And of course, in the United States, be more this courts, this court's opinion, the six prong test, if you will. In this case, Mr. Mr. Lundy, I think did credibly assert legal, legal innocence. We presented alibi evidence at this this mini trial to determine whether the motion to withdraw the guilty plea was was going to be ruled upon favorably in favor of Mr. Lundy. We showed that Spencer was no longer a credible, a credible witness by virtue of the jailhouse phone conversation. We found that Lundy and Perry both testified under under oath that one I mean, excuse me, Perry and Henderson testified under oath that Lundy was not part of their drug organization. Are you are you relating any facts here that are inconsistent with what Judge Dumar found after the hearing? Well, I made a bunch of findings on credibility and none of them were favorable to you. Well, I could perceive. No, they weren't. They weren't. Obviously, what you're what you're relating to us is evidence that you presented that Judge Dumar rejected. That's correct. And we would review those for clear error only. He made findings of fact contrary to what you say. And we have to we unless they're clearly erroneous, we have to follow his facts. You know, I thought what you were challenging is the denial of the motion to withdraw and not the plea colloquy. Am I right? That's correct. And so you were the lawyer. Yes, sir. And you're here today. And certainly I believe that you gave him close assistance. So what was wrong with the plea colloquy? Did he tell the truth then or did he tell the truth later? Well, and of course, that was the same analysis that Judge Dumar did. He said, you know, at the at the plea colloquy, you answered the questions this way. Now you're telling us telling me, the judge, that you committed perjury when you did that. And he said, yes, I did. And so the judge found that he committed perjury at this hearing. That's correct. As a result, that the other at some point time, either at the hearing we were in or at the plea colloquy, one of the one of the two, he found that his testimony at this hearing was incredible. He did. That's right. So he didn't believe him at this hearing. So he found he perjured himself at the hearing, the trial or whatever you call it, the rule 30, the withdrawal hearing, he believed he found that the police officers and the government's witnesses were credible. Right, he did. He did. And I would suggest the court based upon the record that was arbitrary, arbitrarily. So I don't think the court, obviously, the court calls the balls and strikes. And but I believe that that's not supported by the evidence in this case and that he abused his discretion and that the defendant appellant, Mr. Lundy, should be allowed to withdraw his guilty plea. Thank you. Thank you, sir. You have some rebuttal time, Mr. Hatch. Good morning, your honors. May it please the court. Ben Hatch on behalf of the United States. Your honors, I didn't handle this matter below, although I did brief it to this court. I'm Mr. Mitchell's supervisor. And I mentioned that because to my perspective, the nature of the claim that's made in this case is that our office threatened to prosecute an innocent person, Mr. Lundy's wife, in order to induce another innocent person, Mr. Lundy, to plead guilty. And I consider such a claim to be very serious. And I'm happy to say that after what I think was an extensive amount of evidence presented on this matter, that Judge Dumar found that though the claim had been leveled, there just wasn't any credible factual basis for it. And I think that that finding is amply supported by the record. Mr. Lundy, I think what the record shows, Mr. Lundy was in a situation. There was ample evidence against him. There was also evidence against his wife. May I ask you, Mr. Hatch, does the record show what the surveilling agents observed the female do when the car pulled up in front of the Lundy home? I think the record, the officer testified that there was the female driver, the car pulled up, and that Mr. Lundy got out of the passenger side, and that there's not other than that she would have driven away afterwards. They broke off surveillance at that point, so. Or that there was no particular activity on the female's part other than driving the vehicle to drop off and then driving away afterwards. I think he testified- The female did drive away. Well, I can't say he said specifically that, but there wasn't any evidence that who was driving changed. And then the officer testified that they did follow surveillance after the car left, the white car left, and they followed it back to the Lundy residence, which obviously would be consistent. Well, obviously, the reason for my question is, again, on this point about the prosecutability of claims against her. Obviously, if she'd gotten out of the car, if she'd parked and gotten out of the car and gone in the house, that would have bolstered any, would have seriously undermined any claim that you didn't have a prosecutable case against Mrs. Lundy. Correct, and your honor, happily, I'm not in the position here of saying that there was probable cause simply based on an unidentified female consistent with who was probably the defendant's wife having dropped him off. Because of course, as the court's already indicated, familiar with the record, there was a subsequent search warrant. And that search warrant disclosed drugs in common possession areas, guns, one of which she specifically identified belonged to her. And I- There wasn't anything wrong with her having owned that gun, she didn't have any disabilities, did she? No, your honor, not as felon in possession, although of course, you can't own guns in connection with drug trafficking. But the possession of the firearm, standing alone, it was not prosecutable against her on any facts of this record? Well- Tied with the drugs, maybe so, but- Tying with the, other than tying them with the drugs, no, your honor. The firearm standing alone was not. It was an illegal firearm, and she didn't have a felony conviction on her record. No, your honor, no. I could find her. No, it would be the focus on the drugs and then the drugs in connection with that gun. And I think in this case, it's obviously, the question is whether Mr. Mitchell had the basis to assert whether it was a reasonable basis or probable cause that she could be subject to prosecution at the time. But, and there were findings by Judge Dumour about that, but she actually pled guilty in state court under the first offender program. So ultimately, that doesn't amount to a conviction. But that's, I mean, here we have beyond a reasonable doubt. So it's not, I think, a close question as to her potential exposure. Help me out on the timeline. I thought he pled guilty in, one of the six weeks, but it was six months, wasn't it, before he was to be sentenced? Yes, Mr. Lundy pled guilty in January. And then due to a continuance unrelated to this, he would have been sentenced in June. So it was about five and a half months between his guilty plea. And then the day before, he files his motion. Correct. And I think Judge Dumour, there are six factors that this court's identified to assess in this context. And Judge Dumour, frankly, found every single one of them went against Mr. Lundy. And one of them, of course, was that five and a half month delay. I do believe that's longer than this court's cases have suggested would be indicative of perhaps a fair and just motive. It was quite an extensive period of time. And Judge Dumour found that what had happened in the intervening time, and this was based on Mr. Lundy's answers to Judge Dumour's questions, was that A, Mr. Lundy's debriefing had not gone well. He had denied core conduct supporting his conviction. And so perhaps his hopes of the fruits of cooperation had dimmed. And then he also got the pre-sentence report, which had guideline ranges that apparently he thought were unacceptable to him. And so rather than innocence motivating him to move to withdraw it, he had landed himself in a position he didn't like being in and tried to move to withdraw it on that basis. Why didn't Judge Dumour permit him to withdraw the motion to withdraw? Do you know? Well, from reading the record, I'll say what Judge Dumour said, which I understand. Judge Dumour specifically had the defendant on the stand. After Mr. Babineau had indicated he would withdraw it, the defendant was called to the stand. And Judge Dumour was going through with him about, do you want to withdraw this? And he was, that is, to withdraw the motion. He said, yes, I do. Yes, I do. But then Judge Dumour asked him, do you, you know, this statement of facts, which is obviously necessary to support it, do you agree with that? And he still said no. And I think at that point, Judge Dumour said, basically made the assessment, I either deal with this now, and we're halfway through two days of hearings, or I deal with it over a year from now on a 2255. I thought the request to withdraw the withdrawal motion was made just before the hearing commenced the first day. I'm sure Mr. Babineau will correct me if I'm wrong, since he was there. But my reading of the record is that the first day occurred. Then they come back sometime later for the second day. And at the beginning of that day, Judge Dumour had indicated some skepticism of the basis for the motion, and that obviously, you know, and as it turned out here, if you're disputing core offense conduct, your acceptance of responsibility is at risk. I mean, my reading of this was that, in a sense, Judge Dumour might have been trying to telegraph to the defendant, you know, this is a bad road to go down. You don't have a lot of basis. You know, you're risking the benefits of your agreement that you reached. And so the defendant in consultation with Mr. Babineau said, OK, I will withdraw it. But then he was still denying the fact. So again, you know, I can't truck with Judge Dumour's decision that, well, we're halfway through this. We might as well make our record now. Sure. And technically, you could prosecute him on the remaining counts now. Correct. He breached the plea agreement. He did. I don't mean to suggest that he would. I think the United States is satisfied with the current disposition and hopes that that will remain in effect after this court's review. Unless there's any further questions. Thank you, Your Honors. Thank you, Mr. Hatch. Based on your argument, is it the government's position that we don't have to deal with the plea deal waiver? Your Honors, if Your Honors want to decide this on the merits, I think at this point, that's fine. We do have an outstanding motion to dismiss based on the plea deal waiver. Let me ask you this. The thing that troubled me about that issue is that when Judge Dumour was discussing the matter with Mr. Lundy, he talked about the conviction or he either talked about the conviction or the sentence, but not both. And so, therefore, my concern was not to entertain the government's motion or to deny it and just hear it on the merits. Your Honor, candidly, the main benefit of that appellate waiver is so that we, from my perspective, we don't end up having to brief the case and then come do the argument and we're already at that point in this case. So, if the court having considered the . . . But the Rule 11, we picked up on that as well, didn't deal with both of them, didn't deal with the sentence and the conviction both in the Rule 11 quality. I'm sorry. That wasn't covered in the Rule 11. Both facets were not covered. Oh, that Judge Miller didn't specifically . . . Although, I think that the plea deal would have . . . Maybe the plea agreement would cover them, but it wasn't covered during the plea colloquy. I see. I see. In the Rule 11. That's the point that Judge Boyd's making with you. I see. Well, the court . . . It may not be well-founded. So, you may be better off to just let us deal with the merits of it. That'd be fine, Your Honors. I think, you know, I would take the position, obviously, I don't think that the judge in the plea colloquy has to go over every line in the plea agreement, and that their plea agreement, obviously, does cover the sentencing. But at this point, Your Honors, the court's heard argument, and if the court would prefer to affirm on the merits, that'd be fine with the United States. Thank you. Thank you, Mr. Hatch. Mr. Babineau? Just briefly, just to clarify one issue, unless the court has any additional issues for me, Judge Davis. The motion to withdraw, the motion to withdraw, was after the evidence had already started, and then when it came after that, my client asked me to make the motion to withdraw. And then, of course, that's when Judge Dumar was dubious of all that was going on at that point in time, so he wanted to continue to conduct the trial, if you will, as if it was a trial. I don't have any additional argument. There's no additional questions for me. Very good. Thank you, Mr. Babineau. Thank you. We'll come down and greet counsel, and then call our next case.
judges: Robert B. King, Henry F. Floyd, Andre M. Davis